## ECONOMY BALER CO. et al. v. SOLAR STURGES MFG. CO.

Circuit Court of Appeals, Sixth Circuit.
December 15, 1928.

No. 5057.

Clarence B. Zewadski, of Detroit, Mich. (Whittemore, Hulbert, Whittemore & Belknap and Charles B. Belknap, all of Detroit, Mich., on the brief), for appellants.

Carlton Hill and Charles W. Hills, both of Chicago, Ill., for appellee.

Before DENISON, HICKS, and MOORMAN, Circuit Judges.

HICKS, Circuit Judge. This is a patent suit. Plaintiff alleges infringement of patent No. 1,491,842, issued April 29, 1924, for a fire proof waste can by the manufacture and sale of certain metal waste containers.

Defendants do not seriously contest the validity of the patent in suit. They admit that their old type structure (Plaintiff's Exhibit A) reads on the claims in suit, but they deny that they have sold this old type can since the issuance of the plaintiff's patent. They deny that their new type can (Defendants' Exhibit No. 1) infringed. The court held that defendants infringed claim 3 of the patent in suit by manufacturing and selling waste cans embodying the invention patented by this claim. The alleged infringement was in selling one of the old type cans and in manufacturing and selling the new type. We conclude that plaintiff has established by the weight of the evidence that defendants did sell one of the old type cans after the date of plaintiff's patent. After the issuance of plaintiff's patent, Mr. Le Sauvage, plaintiff's president and general manager, requested Alexander Friend to purchase one of these receptacles from defendant. Mr. Friend died before the trial, and his evidence is not in the record, but it is conclusively shown that Mr. Friend did in August, 1924, purchase from defendant Economy Baler Company some character of self-closing metal receptacle. Defendants, however, take the position that there is no testimony indicating that the receptacle so purchased was the one filed herein as Exhibit A. However, the proof clearly establishes that Mr. Hartman, connected with the office of Charles W. Hills, plaintiff's solicitor, did in the summer of 1924 receive at the office the waste paper receptacle filed as Plaintiff's Exhibit A herein; that it came in a brown cardboard packing box, which box he identified and filed with the record as Exhibit J. This box has on it the following shipping label: "From Economy Baler Company, Ann Arbor, Mich. Alexander Friend & Co., Suite 1024-1029 S. LaSalle St., Chicago, Ill. via Amer. Ry. Exp. Collect." This box or carton bore no evidence of having been opened until opened by Hartman. Plaintiff also files defendants' acknowledgment of an order from Friend & Co. to Economy Baler Company for a self-closing receptacle dated August 6, 1924, together with the Express Company's receipt for the same on the same date, and invoice sent by defendants to Friend & Co.

Defendants introduced no positive testimony that they did not sell this Plaintiff's Exhibit A to Friend, and the attempted explanation that, if it was sold at all, it was by mistake, is not convincing.

Claim 3 of the patent in suit is as follows:

"3. The combination of a receptacle having an opening; an inward opening door hinged to said receptacle and serving to close said opening; *and a gravitating toggle linkage mounted within said receptacle, connected with said door and serving to urge said door closed with a thrust which increases as the door approaches closed position.*" (Italics ours.)

This claim is entitled to a liberal construction in its favor and in order to its proper interpretation the specifications may be looked to. M. O. Nelson Mfg. Co. v. Myers & Bros. Co., 25 F.(2d) 659, 663 (C. C. A. 6). In the specifications plaintiff's mechanism is described as follows:

"The door actuating mechanism is housed within the cover between the doors and comprises *a yielding linkage* connected with the doors and operating to urge both doors closed at all times, while permitting either door or both to be pushed open against moderate resistance. In this preferred form, the closing mechanism is so contrived as to exert a closing tendency on the doors which is greatest when both doors are closed."

It is clear, therefore, that the claim is not broad enough to be embraced in the prior art. The claim is for "a gravitating toggle linkage," and is not confined to any particular form of "gravitating toggle linkage." Plaintiff's new type can manufactured under this patent and defendants' old type can are

substantially equivalent in mechanism. Each has an inwardly opening door hinged to the can serving to close the opening; the mechanism for closing the door in each can is mounted within the can, and is hinged to the door, and closes the door with an increasing thrust. This identity of device and function is admitted. The defendants began the manufacture of their old type can about May, 1922, and continued until December, 1923. During this period they were fully aware of plaintiff's application in the Patent Office. They knew the claims and specifications of plaintiff's patent being in an interference. They knew that, upon the issuance of plaintiff's patent, they could no longer manufacture their old type can. With this situation confronting them, they abandoned the manufacture of the old type can in December, 1923, although they retained a number of the completed cans in stock, out of which we apprehend the sale was made to Friend. At the same time they developed their new design (Defendants' Exhibit 1), and began its manufacture about March 7, 1924, and continued therein until after the issuance of plaintiff's patent on April 29, 1924. Comparing plaintiff's can under its patent with defendants' new type can, in plaintiff's device the outer end of each moving toggle link or arm is connected with a door by a hinge and the inner end is connected with a pivot in the manner described in Young v. Grand Rapids Refrigerator Co. (C. C. A.) 268 F. 966. The weight of the pivot upon the arms or links as thus connected causes the downward and outward motion of the arm or link with gradually increasing power until the door is closed with a thrust. In defendants' device the outer arm of the link similar to plaintiff's link or arm member is connected with the door by a hinge, and the inner end is connected to rollers operating upon a track suspended perpendicularly from the top of the can. The weight of the rollers causes the rollers and attached arm to descend with the same result as in plaintiff's device. They descend in the same way, except that the roller end of the arm descends along the track while in plaintiff's device the direction of the corresponding descending arm is controlled by the pressure on the toggle pivot, and the difference in operation is insubstantial. The rollers except in their weight serve no purpose other than to decrease resistance caused by their contact with the track. The functions performed by each mechanism are the same, and the manner of their performance is so nearly the same as to justify the conclusion

that plaintiff is entitled to defendants' device as an equivalent. The defendants' attempt at differentiation is not convincing. They invoke the mechanical principle of a moving strut, and define their device as a moving strut attached to the door at the outer end and having a wheel attached at the other end, the whole operated by gravity along a suspended track. This all has its substantial counterpart in the arm or link action of plaintiff's device. The same members denominated as "moving struts" by defendants "serve as strut links" according to the specifications of plaintiff's patent (line 74). It is not necessary to an infringement that the two devices operate identically in the same way or to the same extent. It is only necessary that they substantially do so. Sly v. Russell, 189 F. 61, 70 (C. C. A. 6). As a matter of practical application to the case in hand, no appreciable difference is discernible in the operation of the "gravitating toggle linkage" secured to plaintiff in its claim 3 and in that of defendant's device. They both perform the same function in practically the same way and to the same extent. Any difference is found in theory rather than in fact.

Upon the whole we conclude that there was infringement in the sale of defendants' old type can and in the manufacture and sale of defendants' new type structure, and the decree is therefore affirmed.